## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MEHRDAD SERESHTI,<br><br>                    Plaintiff,<br><br>           v.<br><br>ERIC GAUDIOSI *et al*.,<br><br>                    Defendants. | Civil Action No. 24-1288 (BAH)<br><br>Judge Beryl A. Howell |

## <u>MEMORANDUM OPINION</u>

Plaintiff Mehrdad Sereshti, a citizen of Iran, seeks to compel defendants Eric Gaudiosi, Deputy Chief of the U.S. Embassy in the United Arab Emirates, and Antony Blinken, Secretary of the U.S. Department of State, in their official capacities (collectively, "defendants"), to adjudicate his immigrant visa application, which had been in administrative processing for approximately fifteen months at the time plaintiff initiated this lawsuit. *See* Compl. ¶¶ 23–27, ECF No. 1.[1] Plaintiff claims that defendants have unreasonably delayed adjudication of his visa application in violation of the Administrative Procedure Act, 5 U.S.C. § 706(1), and the Mandamus Act, 28 U.S.C. § 1361, and seeks to compel defendants to adjudicate his visa application. Compl. ¶¶ 28–40. Defendants have now moved to dismiss the complaint for lack of subject matter jurisdiction, under Federal Rule of Civil Procedure 12(b)(1), or alternatively, for failure to state a claim, under

---

[1]      "The proper method for calculating delay . . . is the length of time between the last action the government took on a visa application and the filing of plaintiff's complaint." *Isse v. Whitman*, No. 22-cv-3114 (BAH), 2023 WL 4174357, at *6 n.4 (D.D.C. June 26, 2023) (citing *Arab v. Blinken*, 600 F. Supp. 3d 59, 68 n.7 (D.D.C. 2022) and *Rahimian v. Blinken*, No. 22-cv-785 (BAH), 2023 WL 143644, at *7 (D.D.C. Jan. 10, 2023)). The last action taken on plaintiff's visa application was his February 2023 interview at the U.S. Embassy in the United Arab Emirates. *See* Compl. ¶¶ 23–27. Approximately fifteen months elapsed between said interview and the May 2024 filing of plaintiff's complaint. *See* Compl.

Rule 12(b)(6).  *See* Defs.' Mot. Dismiss ("Defs.' Mot."), ECF No. 8.  For the reasons below, defendants' motion is granted.

## I.    BACKGROUND

A review of the statutory and regulatory background underlying the claims is set out below, followed by a summary of the factual and procedural history of the case.

### A.    Statutory and Regulatory Background

The Immigration and Nationality Act established a program that allows United States citizens and lawful permanent residents to petition for certain close family members—their spouses, siblings, and children—to obtain immigrant visas.  8 U.S.C. §§ 1153(a)(1)–(4); *see also Scialabba v. Cuellar de Osorio*, 573 U.S. 41, 45 (2014) (describing the operation of this visa program).  For applications under this provision, the sponsored applicant is designated as the "principal beneficiary" of the petition, and their spouse and any minor children are designated as "derivative beneficiaries," who are "entitled to the same status, and the same order of consideration . . . [as] the spouse or parent."  8 U.S.C. § 1153(d); *see also Scialabba*, 573 U.S. at 45.

To sponsor a relative for such a visa, the U.S. citizen or lawful permanent resident must first submit a Form I-130 to the Department of Homeland Security's U.S. Citizenship and Immigration Services ("USCIS") to establish a qualifying relationship with the family member to be sponsored.  *See* USCIS, *I-130, Petition for Alien Relative*, https://www.uscis.gov/i-130 (last updated Oct. 23, 2024).[2]  Upon USCIS's approval of the Form I-130, the application is transferred to the Department of State's National Visa Center ("NVC").  *See* USCIS, *Immigrant Visa Process*, https://travel.state.gov/content/travel/en/us-visas/immigrate/the-immigrant-visa-process/step-1-submit-a-petition/step-2-begin-nvc-processing.html (last visited Oct. 24, 2024).    Once the

---

[2]        Judicial notice is appropriately taken of information on official public government websites.  *See Cannon v. District of Columbia*, 717 F.3d 200, 205 n.2 (D.C. Cir. 2013).

applicant has submitted various required forms and supporting documentation and paid the applicable fees to the NVC, the NVC schedules a consular interview for the applicant at the appropriate embassy. *Id.* Following the interview, the consular officer must either issue or refuse the visa. *See* 22 C.F.R. 42.81(a).

"No visa or other documentation shall be issued . . . if (1) it appears to the consular officer . . . that such alien is ineligible to receive a visa . . . under section 1182 of this title, or any other provision of law, (2) the application fails to comply with the provisions of this chapter, or the regulations issued thereunder, or (3) the consular officer knows or has reason to believe that such alien is ineligible to receive a visa or such other documentation under section 1182 of this title, or any other provision of law[.]" 8 U.S.C. § 1201(g). A consular officer's decision to refuse issuance of the visa may be overcome "in two instances: when additional evidence is presented, or administrative processing is completed." 9 FAM § 306.2-2(A)(a). As to the former, "[w]hen the applicant has presented additional evidence to attempt to overcome a prior refusal," a consular officer "should re-open and re-adjudicate the case by overcoming the prior INA 221(g) refusal and determining whether the applicant is eligible for a visa." *Id.* § 306.2-2(A)(a)(1). A "prior INA 221(g) refusal entered for administrative processing" may also be overcome if the consular officer "determine[s] administrative processing is completed" and receives the additional "needed information." *Id.* § 306.2-2(A)(a)(2)(a).

### B.    Factual Background

In September 2006, Daryoush Tamizkar, a U.S. citizen, submitted a Form I-130 petition to USCIS on behalf of his sister Fatemeh Tamizkar, who is the wife of plaintiff Mehrdad Sereshti. Compl. ¶ 2. Plaintiff and his son with Fatemeh, Arash Seresht, are derivative beneficiaries of the application. *Id.*; *see also* Pl.'s Opp'n Defs.' Mot. Dismiss at 7 ("Pl.'s Opp'n"), ECF No. 9. USCIS

approved the petition in April 2009.  *Id.* ¶ 18. Plaintiff and his family received the Notice of Immigrant Visa Case Creation from NVC in June 2019 and completed their visa applications and paid the relevant fees in October 2019.  *Id.* ¶¶ 20–21.  In August 2020, plaintiff and his family were notified that their applications were complete and were pending to schedule interviews.  *Id.* ¶ 22.  All three individuals were interviewed at the U.S. Embassy in the United Arab Emirates in February 2023, after which interview the applications of plaintiff's wife and son were approved, and plaintiff's application was "placed in administrative processing pursuant to the Immigration and Nationality Act . . . § 221(g)."  Compl. ¶¶ 23–25; *see* 8 U.S.C. § 1201(g).  Plaintiff then completed and submitted a DS-5535 Form, answering supplemental questions on his visa application, as requested by a consular officer.  Compl. ¶ 25; *see also* Pl.'s Opp'n at 7.  Since the interview, plaintiff has made numerous inquiries regarding the status of his application but received no meaningful response.  Compl. ¶ 27; Pl.'s Opp'n at 7–8.

As of July 2, 2024, the date plaintiff's case was last updated, the status of plaintiff's visa application is listed as "Refused."  *See* U.S. Dep't of State, *Visa Status Check*, https://ceac.state.gov/CEACStatTracker/Status.aspx; Pl.'s Opp'n at 7 (identifying plaintiff's immigrant visa application number).  The same page of the State Department's website, however, states that "If you were informed by the consular officer that your case was refused for administrative processing, your case will remain refused while undergoing such processing. You will receive another adjudication once such processing is complete."  *Id.* This suggests that plaintiff's application remains subject to administrative processing.

Plaintiff alleges that the delay in receiving a final decision on his immigrant visa application has "put on indefinite hold the reunification of [p]laintiff and his family," Compl. ¶ 6, and caused "exceptional financial, emotional, and personal hardship to [p]laintiff, as well as his

wife and son," Pl.'s Opp'n at 8.    According to the complaint, the delay and uncertainty has "affect[ed] Plaintiff mentally" and led to him being diagnosed with high blood pressure requiring daily medication, *see* Compl. ¶ 8; resulted in financial losses of roughly $50,000 resulting from the maintenance of two separate households in Iran and the United States, *id.* ¶ 10; and (3) negatively impacted plaintiff's career in the shipping industry by preventing him from securing a long-term employment contract and instead requiring him to take only "short-term assignments," *id.* ¶ 9.

### C.    Procedural History

On May 2, 2024, approximately fifteen months after plaintiff's visa application was placed in administrative processing, plaintiff filed a two-count complaint seeking to compel defendants to adjudicate his application.  *See* Compl.  Plaintiff asserts that defendants "maintain jurisdiction" over his visa application, Pl.'s Opp'n at 9, and have a "nondiscretionary duty to review and adjudicate" it, Compl. ¶ 29, which duty he seeks to enforce with relief under the APA and the Mandamus Act, *see id.* ¶¶ 28-39.  Specifically, plaintiff seeks the adjudication of his application "within fifteen (15) calendar days of this [Court's] order or as soon as reasonably possible," attorney's fees and costs, and "such other and further relief as may be appropriate."  *Id.* ¶ 40(b)–(d).

On July 30, 2024, defendants moved to dismiss plaintiff's complaint under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), Defs.' Mot. at 1, which motion plaintiff opposes, *see* Pl.'s Opp'n.  This motion is now ripe for consideration.

## II.    LEGAL STANDARD

### A.    Motion to Dismiss for Lack of Subject-Matter Jurisdiction

"[F]ederal courts are courts of limited jurisdiction," *Home Depot U.S.A., Inc. v. Jackson*, 587 U.S. 435, 437 (2019) (citation omitted), "possessing only that power authorized by Constitution and statute," *Gunn v. Minton*, 568 U.S. 251, 256 (2013) (citation omitted). "[F]orbidden . . . from acting beyond [their] authority," *NetworkIP, LLC v. Fed. Commc'n Comm'n*, 548 F.3d 116, 120 (D.C. Cir. 2008) (citations omitted), federal courts "have an affirmative obligation to consider whether the constitutional and statutory authority exist for us to hear each dispute," *James Madison Ltd. By Hecht v. Ludwig*, 82 F.3d 1085, 1092 (D.C. Cir. 1996) (citation omitted).  Absent subject-matter jurisdiction, a case must be dismissed.  *See Arbaugh v. Y&H Corp.*, 546 U.S. 500, 506–07 (2006); *see also* Fed. R. Civ. P. 12(h)(3).

When considering a motion to dismiss under Rule 12(b)(1), the court "assume[s] that the complaint states a valid legal claim," *Huron v. Cobert*, 809 F.3d 1274, 1278 (D.C. Cir. 2016) (citing *Info. Handling Servs., Inc. v. Def. Automated Printing Servs.*, 338 F.3d 1024, 1029 (D.C. Cir. 2003)), and must "accept the well-pleaded factual allegations as true and draw all reasonable inferences from those allegations in the plaintiff's favor," *Kareem v. Haspel*, 986 F.3d 859, 865 (D.C. Cir. 2021) (quoting *Arpaio v. Obama*, 797 F.3d 11, 19 (D.C. Cir. 2015)).  In addition, to assure itself of its jurisdiction over a claim, "a court may consider materials outside the pleadings[.]" *Jibril v. Mayorkas*, 101 F.4th 857, 866 (D.C. Cir. 2024) (brackets omitted) (quoting *Kareem*, 986 F.3d at 866 n. 7).

### B.    Motion to Dismiss for Failure to State a Claim

To survive a motion to dismiss under Rule 12(b)(6), the "complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Wood v. Moss*, 572 U.S. 744, 757–58 (2014) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  A facially plausible claim pleads facts that are not "'merely consistent with' a defendant's liability" but "that

allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556–57 (2007)); *see also Langeman v. Garland*, 88 F.4th 289, 294 (D.C. Cir. 2023). In deciding a motion under Rule 12(b)(6), the court must consider the whole complaint, accepting all factual allegations as true, "even if doubtful in fact." *Twombly*, 550 U.S. at 555 (citations omitted). Courts do not, however, "assume the truth of legal conclusions . . . or 'accept inferences that are unsupported by the facts set out in the complaint.'" *Air Excursions LLC v. Yellen*, 66 F.4th 272, 277 (D.C. Cir. 2023) (quoting *Islamic Am. Relief Agency v. Gonzalez*, 477 F.3d 728, 732 (D.C. Cir. 2007), and first citing *Iqbal*, 556 U.S. at 678; and then *Kareem*, 986 F.3d at 865-66). "In determining whether a complaint fails to state a claim," a court "may consider only the facts alleged in the complaint, any documents either attached to or incorporated in the complaint and matters of which [the court] may take judicial notice." *Marshall's Locksmith Serv. Inc. v. Google, LLC*, 925 F.3d 1263, 1271–72 (D.C. Cir. 2019) (alteration in original) (quoting *Hurd v. District of Columbia*, 864 F.3d 671, 678 (D.C. Cir. 2017)).

## III.    DISCUSSION

Defendants advance three main arguments in support of dismissal of the complaint, including that: (1) the doctrine of consular nonreviewability bars judicial review; (2) no non-discretionary duty exists for the agency to adjudicate plaintiff's visa application; and (3) on the merits, plaintiff "fails to plead a plausible claim of unreasonable delay" under the Mandamus Act and the APA. Defs.' Mot. at 1–3. Each argument is addressed *seriatim*.

### A.    Consular Nonreviewability Doctrine

Defendants contend that plaintiff's suit is "precluded by the consular nonreviewability doctrine," Defs.' Mot. at 1, which prevents courts from reviewing "a consular officer's decision to

issue or withhold a visa," *id.* at 7 (emphasis omitted) (quoting *Baan Rao Thai Rest v. Pompeo*, 985 F.3d 1020, 1024 (D.C. Cir. 2021) (citing *Saavedra Bruno v. Albright*, 197 F.3d 1153, 1159 (D.C. Cir. 1999)) (other citation omitted)); *see also Dep't of State v. Muñoz*, 144 S. Ct. 1812, 1820 (2024) ("The Immigration and Nationality Act (INA) does not authorize judicial review of a consular officer's denial of a visa; thus, as a rule, the federal courts cannot review those decisions. This principle is known as the doctrine of consular nonreviewability." (footnote omitted)).   Two "narrow" exceptions to this doctrine have been recognized: first, when "the denial of a visa allegedly burdens the constitutional rights of a U.S. citizen," *Muñoz*, 144 S. Ct. at 1821 (quoting *Trump v. Hawaii*, 585 U.S. 667, 703 (2018)), and second, "when a statute expressly authorizes" courts to review consular decisions," *Colindres v. U.S. Dep't of State*, 71 F.4th 1018, 1021 (D.C. Cir. 2023), *cert. denied*, No. 23-348, 2024 WL 3259699 (U.S. July 2, 2024) (quotation marks omitted) (quoting *Baan Rao Thai Rest.*, 985 F.3d at 1025); *see also Muñoz*, 144 S. Ct. at 1820.

Defendants vigorously assert that a consular officer has already "issued [the] decision contemplated by the Immigration and Nationality Act" on plaintiff's visa application by "withholding the issuance of a visa" after plaintiff's interview and that plaintiff's claim thus seeks to "compel the [g]overnment" to re-adjudicate an already-refused application.  Defs.' Mot. at 1. According to defendants, because an "ultimate decision" on the visa has already been issued, *id.* at 2, and because plaintiff's claim does not satisfy either narrow exception to the doctrine, *see id.* at 7–8, judicial review of the decision to withhold issuance of the visa is precluded in this case, *see id.* at 1–2.  Plaintiff counters that the consular officer's "refusal" is not final but resulted merely in placing plaintiff's application into "administrative processing," which is a "temporary measure," Compl. ¶ 26 (citing *Nine Iraqi Allies Under Serious Threat Because of Their Faithful Service to the U.S. v. Kerry*, 168 F. Supp. 3d 268, 275–84 (D.D.C. 2016)), as signaled by defendants'

communication to plaintiff their "intent to take . . . additional action" on his application, Pl.'s Opp'n at 5. Thus, according to plaintiff, defendants still have a "non-discretionary duty to 'conclude' this matter by making a *final* decision on the application." Pl.'s Opp'n at 5 (emphasis in original).

In similar cases, the consular nonreviewability doctrine has been found inapplicable where, as here, a consular officer's refusal under 8 U.S.C. § 1201(g) places a visa application in administrative processing for further consideration. *See, e.g., Al-Gharawy v. U.S. Dep't of Homeland Sec.,* 617 F. Supp. 3d 1, 15–16 (D.D.C. 2022) (collecting cases). These cases recognize a distinction between "a consular officer's *substantive* decisions to approve or deny a visa application," to which the consular nonreviewability doctrine applies, and "the *procedural* considerations" of "whether a consular officer has engaged in unreasonable delay in considering an application," to which the doctrine does not. *Id.* at 12–13 (emphasis in original) (citation omitted). While the former decision is "inherently political" and thus outside the purview of the courts, *id.*, the latter decision is "not 'an area in which legislative action [and] traditional practice indicate that courts are unqualified or that issues are inappropriate for judicial determination,'" *id.* at 13 (quoting *Saavedra Bruno*, 197 F.3d at 1160) (alteration in original) (internal quotation marks omitted). The doctrine is "not triggered" when a final decision on the application has not been issued and "remains under consideration," including in cases like the instant case where "an application is listed as 'rejected' based on it being 'refused for administrative processing.'" *Barazandeh v. U.S. Dep't of State*, No. 23-cv-1581 (BAH), 2024 WL 341166, at *4 (D.D.C. Jan. 30, 2024) (quotation marks and citations omitted); *see also Baygan v. Blinken*, No. 23-cv-2840 (JDB), 2024 WL 3723714, at *4 (D.D.C. Aug. 8, 2024) ("[T]his Court, like other judges in this District, concludes that the § 221(g) refusal for further administrative processing is not a final

decision." (citing *Tahavori v. Blinken*, No. 23-cv-1460 (JDB), 2024 WL 1328546, at *3–4 (D.D.C. Mar. 28, 2024))); *Aghabeigi v. Dep't of State*, No. 23-cv-1167 (CKK), 2024 WL 1344412, at *8 (D.D.C. Mar. 29, 2024) (rejecting defendants' "argument . . . premised on the incorrect characterization that there has been a final determination about [plaintiff's] application" where plaintiff's "visa remains in administrative processing" and notwithstanding "[d]efendants' assertions to the contrary, [p]laintiff is seeking to compel a determination on his application, not asking the Court to issue another decision on a refused visa application") (emphasis and citations omitted); *Rostamnia v. Blinken*, No. 23-cv-1638 (RDM), 2024 WL 1328462, at *1 n.2 (D.D.C. Mar. 28, 2024) (similar).[3]

The D.C. Circuit's recent, unpublished decision in *Karimova v. Abate*, No. 23-5178, 2024 WL 3517852 (D.C. Cir. July 24, 2024) (per curiam), "casts some doubt on the reasoning in those decisions," *Asadi v. U.S. Dep't of State*, No. 23-cv-1953 (RC), 2024 WL 3835409, at *4 (D.D.C. Aug. 15, 2024). In *Karimova*, a "consular officer reviewed [plaintiff's] application and interviewed her," "officially 'refused' her application," and "then placed her application in administrative processing in order to verify qualifications for [her requested] visa." *Karimova*, 2024 WL 3517852, at *2 (citation and quotation marks omitted). Noting that "[t]he status of [the plaintiff's] application remains refused" despite being placed in administrative processing, *id.*, the D.C. Circuit affirmed the dismissal of plaintiff's complaint, which sought an order directing "the

---

[3]     Defendants characterize plaintiff's claims as "ultimately [] ask[ing] the Court to decide whether the consular officer can continue to withhold the visa based on the officer's initial refusal," Defs.' Mot. at 8, and argue that the consular nonreviewability doctrine applies to bar from judicial review decisions "to issue or *withhold* a visa," Defs.' Mot. at 7 (emphasis in original) (quoting *Baan Rao Thai Rest.*, 985 F.3d at 1024) (other citation omitted). Regardless of whether the consular officer's action is characterized as a "refusal" to issue, or as an ongoing decision "to withhold," a visa, Defs.' Mot. at 8, "*Baan Rao* says nothing about the judicial reviewability of visa processing delay occurring before an officer has made a final decision," *Baygan*, 2024 WL 3723714, at *5 (emphasis and citation omitted), nor, as other Judges on this Court have soundly reasoned, does it "expand[] the doctrine of consular nonreviewability to administrative-processing claims," *Pourabdollah v. Blinken*, No. 23-cv-1603 (DLF), 2024 WL 474523, at *5 (D.D.C. Feb. 7, 2024).

consular officer who oversaw her visa application to adjudicate it conclusively," *id.* at *1, because the consular officer had already "reviewed and then lawfully refused" the application, *id.* at *5. The Circuit reasoned that once "a consular officer makes an official decision refusing to issue a visa," that visa "remains officially refused" even though "the consular officer may choose to place an officially refused application in administrative processing," and even though "the officer can determine" later, based on new information, "that the administrative processing is 'completed' and . . . then re-open and re-adjudicate the applicant's case." *Id.* at *2 (citation omitted). Therefore, the plaintiff had not identified "an adequate legal basis" for finding that the consular officer had a legal "duty" to "make yet another 'final decision'" on her already-refused visa application." *Id.* at *6.

The decision in *Karimova* raises questions about the body of case law in this District finding that a final decision has not been rendered on an application that has been "refused" subject to further administrative processing and thus rejecting application of the consular non-reviewability doctrine in such circumstances. As applied in the instant case, *Karimova* would suggest that once the consular officer reviewed plaintiff's application, interviewed him, and withheld issuance of a visa at the end of his interview, *see* Compl. ¶¶ 23–25; Pl.'s Opp'n at 7, "[p]laintiff's visa application was 'officially refused' notwithstanding its later placement in administrative processing." *Asadi*, 2024 WL 3835409, at *4 (citing *Karimova*, 2024 WL 3517852, at *4); *see also Motevali v. Blinken*, No. 23-cv-2133 (RC), 2024 WL 3580937, at *4 (D.D.C. July 30, 2024) (recognizing the same); *Sharifishourabi v. Blinken*, No. 23-cv-3382 (RC), 2024 WL 3566226, at *5 (D.D.C. July 29, 2024) (same).

Nonetheless, accepting plaintiff's allegations as true at the pleading stage, *see Ziglar v. Abbasi*, 582 U.S. 120, 127 (2017), the consular officer's "refusal" of plaintiff's visa application

subject to further "administrative processing" may not have been a final decision on his application, but rather "a temporary measure, signaling that processing [was] ongoing," Compl. ¶ 26. The consular officer's post-"refusal" request for plaintiff to complete a DS-5535 Form, containing supplemental questions for visa applicants, *id.* ¶ 25, reinforces this conclusion; as plaintiff argues, defendants "expect to take further action on [plaintiff's] application and have communicated their intent to take such additional action" to him, Pl.'s Opp'n at 5; *see also Baygan*, 2024 WL 3723714, at *4 (finding on similar facts that additional contact with the embassy showed plaintiff's application remained pending, notwithstanding refusal).

In any event, this Court "need not conclusively determine the extent to which *Karimova* disrupts prior decisions rejecting the government's reliance on the consular non-reviewability doctrine in cases similar to this one," *Motevali*, 2024 WL 3580937, at *5, since, as set forth *infra* in Part III.C, plaintiff's claims fail on the merits, *see Karimova*, 2024 WL 3517852, at *6 ("not decid[ing] whether that principle of nonreviewability applies in this case"); *Sharifishourabi*, 2024 WL 3566226, at *4–5 (in post-*Karimova* suit, assuming without deciding that "the doctrine of consular non-reviewability does not bar review of [plaintiffs'] claims").

## B.    Non-Discretionary Duty

In addition to relying on the consular nonreviewability doctrine, defendants also claim that plaintiff has failed to identify "a clear, non-discretionary duty requiring a consular officer to adjudicate, let alone re-adjudicate, any specific visa application," Defs.' Mot. at 12, as is required for a court to grant mandamus, *see, e.g.*, *In re Ctr. for Biological Diversity*, 53 F.4th 665, 670 (D.C. Cir. 2022) ("A petitioner seeking mandamus must first establish that the agency has violated 'a crystal-clear legal duty.'" (quoting *In re Nat'l Nurses United*, 47 F.4th 746, 752 (D.C. Cir. 2022)). Plaintiff, on the other hand, argues that such a duty is found in the INA's directive that "[a]ll

immigrant visa applications shall be reviewed and adjudicated by a consular officer," 8 U.S.C. § 1202(b), in combination with the APA, which requires that agencies take nondiscretionary actions within a "reasonable time," 5 U.S.C. § 555(b), and directs courts to compel such actions when they are "unreasonably delayed," *id.* § 706(1). *See* Compl. ¶¶ 29–32, 36–39; Pl.'s Opp'n at 10–11.

Defendants rely on *Karimova* to argue that "5 U.S.C. § 555(b) imposes no such clear duty, and [p]laintiff can cite no provision of the INA or other statute that supposedly provides a source of that duty." Defs.' Mot. at 13 (citation omitted). In *Karimova*, the D.C. Circuit held that plaintiff had failed to "adequately allege[] that the consular officer has [] a duty" conclusively to adjudicate her visa application, where plaintiff "relie[d] on Section 555(b) of the APA"—"and *only* Section 555(b)"—"as the source of the consular officer's alleged duty." *Karimova*, 2024 WL 3517852, at *1, *3–6 (emphasis in original); *see* 5 U.S.C. § 555(b) (providing that "each agency shall proceed to conclude a matter presented to it" "[w]ith due regard for the convenience and necessity of the parties or their representatives and within a reasonable time"). Section 555(b), the Circuit found, "does no such thing." *Karimova*, 2024 WL 3517852, at *3. On its own, Section 555(b) does not "contain[] a specific, unequivocal command to act that would justify mandamus or [APA] Section 706(1) relief every time someone complained of delay," *id.* at *4 (quotation marks and citation omitted), a conclusion reinforced by three additional considerations relevant to visa applications: (1) "consular officers have broad discretion when adjudicating visa applications," *id.* (citations omitted); (2) plaintiff's "'matter' has already been 'conclude[d],'" *id.* (quoting 5 U.S.C. § 555(b)); and (3) plaintiff's claim "ar[ose] within a field that is vitally and intricately interwoven with contemporaneous policies in regard to the conduct of foreign relations and the war power," which "types of claims generally fall outside the Judicial Branch's wheelhouse," *id.* at *5 (brackets, quotation marks, and citations omitted).

*Karimova* certainly "casts some doubt on whether consular officers are indeed subject to a discrete, mandatory duty to timely complete administrative processing after a visa application has already been 'refused,'" since although *Karimova* "confined its holding to § 555(b)," its "logic may well have broader implications for visa mandamus cases in this District." *Baygan*, 2024 WL 3723714, at *5 n.1; *see also Ibrahim v. Spera*, No. 23-cv-3563 (ABJ), 2024 WL 4103702, at *3 (D.D.C. Sept. 6, 2024) (finding that, under *Karimova*, it "does not make a difference" whether a plaintiff moves under only the APA or under the APA in combination with 8 U.S.C. § 1202(b)).

Still, *Karimova* does not clearly dispose of the claims raised by plaintiff in the instant case. Unlike in *Karimova*, plaintiff here relies not only on Section 555(b), but also the aforementioned provision of the INA, 8 U.S.C. § 1202(b), as the source of defendants' alleged non-discretionary duty. *See* Compl. ¶¶ 29–30.

Assuming, without deciding, that a mandatory non-discretionary agency action applies in the form of the statutory requirement that "[a]ll immigrant visa applications shall be reviewed and adjudicated by a consular officer," 8 U.S.C. § 1202(b), in combination with the APA, 5 U.S.C. §§ 555(b), 706(1), is appropriate in this case to resolve defendants' pending motion. *See Karimova*, 2024 WL 3517852, at *6 (identifying *Da Costa v. Immigr. Inv. Program Off.*, 80 F. 4th 330, 340 (D.C. Cir. 2023), as "locating [USCIS's] 'nondiscretionary duty' to adjudicate visa petitions in a special provision of the immigration code, not Section 555(b)"); *see also Muñoz*, 144 S. Ct. at 1820 n.4 (confirming that "the doctrine of consular nonreviewability is not jurisdictional" and that the Supreme Court has "assume[d] without deciding that [the] plaintiffs' statutory claims were reviewable" (alterations in original) (citation omitted)); *Asadi*, 2024 WL 3835409, at *5 ("assum[ing] favorably to [the p]laintiff that her complaint identifies a clear, non-discretionary duty" even though "[p]laintiff largely relies on section 555(b) of the APA as the source of such a

duty" since "her claims fail on the merits" (citations omitted)); *Baygan*, 2024 WL 3723714, at *5 (assuming, "without deciding, that the State Department has a non-discretionary, discrete duty to adjudicate [the plaintiff's] visa application"); *Giza v. Blinken*, No. 23-cv-1641 (CRC), 2024 WL 3967284, at *4 (D.D.C. Aug. 27, 2024) ("The Court need not decide whether the INA or its regulations impose this duty because, either way, the [plaintiffs] have not plausibly alleged that the delay in adjudicating their visa applications is unreasonable."). Without clear, binding precedent supporting plaintiff's position that the INA and APA together impose a non-discretionary duty on the government to adjudicate specific visas, assuming reviewability allows consideration of the merits of plaintiff's visa mandamus claim. *See Almaqrami v. Pompeo*, 933 F.3d 774, 784 n.3 (D.C. Cir. 2019) ("[C]ourts 'may assume without deciding that plaintiffs' statutory claims are reviewable' and proceed to the merits 'notwithstanding consular nonreviewability.'" (quoting *Trump*, 585 U.S. at 682–83)); *Janay v. Blinken*, No. 23-cv-3737 (RDM), 2024 WL 3432379, at *10 (D.D.C. July 16, 2024) (same).

## C.    Adjudication Delay Is Not Unreasonable

On the merits, defendants argue that plaintiff fails to state a plausible claim for relief because any delay in the adjudication of plaintiff's visa application is not unreasonable. *See* Defs.' Mot. at 20–29. "To state a claim for unreasonable delay, [p]laintiffs must first allege that the agency 'failed to take a discrete agency action that it is required to take,' and, second, that the delay was unreasonable." *Da Costa*, 80 F.4th at 340 (quoting *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 64 (2004), and citing *Am. Anti-Vivisection Soc'y v. U.S. Dep't of Agric.*, 946 F.3d 615, 621 (D.C. Cir. 2020)).

The D.C. Circuit's six "*TRAC*" factors guide this Court's unreasonable delay analysis:

(1) [T]he time agencies take to make decisions must be governed by a rule of reason; (2) where Congress has provided has provided a timetable or other

> indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason; (3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake; (4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority; (5) the court should also take into account the nature and extent of the interests prejudiced by delay; and (6) the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed.

*Telecomms. Rsch. & Action Ctr. v. F.C.C. (*"*TRAC*"*)*, 750 F.2d 70, 80 (D.C. Cir. 1984) (citations and quotation marks omitted; formatting modified); *see also Da Costa*, 80 F.4th at 340 ("[T]o guide our unreasonable-delay analysis, we ordinarily look to six non-exclusive *TRAC* factors." (citing *id.*)); *Mukkavilli v. Jaddou*, No. 23-5138, 2024 WL 1231346, at *1 (D.C. Cir. Mar. 22, 2024) (per curiam) (same). While these factors apply to claims of unreasonable delay under the APA, *see Norton*, 542 U.S. at 63–64; *Afghan & Iraqi Allies v. Blinken*, 103 F.4th 807, 815 (D.C. Cir. 2024), "essentially the same" standard also applies to claims of unreasonable delay that seek relief under the Mandamus Act, *see Viet. Veterans of Am. v. Shinseki*, 599 F.3d 654, 659 n.6 (D.C. Cir. 2010); *Norton*, 542 U.S. at 63–64.

Plaintiff argues that evaluation of the *TRAC* factors is inappropriate at the motion to dismiss stage because of the *TRAC* inquiry's "fact-intensive" nature. Pl.'s Opp'n at 6. Where a plaintiff's complaint supplies sufficient factual allegations to evaluate the TRAC factors, however, a court may do so to determine whether the facts alleged are sufficient to state a plausible claim for unreasonable administrative delay. *See, e.g.*, *Mokkapati v. Mayorkas*, No. 21-cv-1195 (BAH), 2022 WL 2817840, at *4 n.4 (D.D.C. July 19, 2022) (collecting cases reflecting "the majority view in this District . . . that application of the *TRAC* factors is appropriate at the motion-to-dismiss stage when the facts alleged do not support a plausible claim of unreasonable delay"); *Sarlak v. Pompeo*, No. 20-cv-35 (BAH), 2020 WL 3082018, at *5 (D.D.C. June 10, 2020). Here, the parties

have supplied extensive factual allegations, including undisputed specific dates when relevant agency actions occurred, rendering application of the *TRAC* factors entirely appropriate. *See, e.g.*, *Mukkavilli*, 2024 WL 1231346, at *1–2 (affirming dismissal of unreasonable-delay claim following weighing of *TRAC* factors); *Da Costa*, 80 F.4th at 339–46 (same).  On review, these allegations clearly show that the agency's delay in adjudicating plaintiff's visa is not unreasonable.

### 1.    *TRAC* Factors 1 and 2

The first two *TRAC* factors, which consider "the extent of and reasons for" agency delays, *Afghan & Iraqi Allies*, 103 F.4th at 816, both weigh in favor of defendants.  The first *TRAC* factor— whether the agency follows a rule of reason in processing visas—is the "most important" one, *id.* (quoting *In re Core Commc'ns Inc.*, 531 F.3d 849, 855 (D.C. Cir. 2008)), and is often analyzed in conjunction with the second *TRAC* factor—whether "Congress has established a timetable," *Mukkavilli*, 2024 WL 1231346, at *1 (citing *TRAC*, 750 F.2d at 80)—because consideration of whether agency adjudication delays are unreasonable necessarily implicates any deadlines imposed by Congress, *see Da Costa*, 80 F.4th at 340, and thus may "give[] content to the first," *Afghan & Iraqi Allies*, 103 F.4th at 816 (quoting *In re United Mine Workers of Am. Int'l Union*, 190 F.3d 545, 549 (D.C. Cir. 1999)).

In assessing the first *TRAC* factor, courts "evaluate the length of the delay in light of 'the complexity of the task at hand, the significance (and permanence) of the outcome, and the resources available to the agency.'"  *Da Costa*, 80 F.4th at 340 (quoting *Mashpee Wampanoag Tribal Council, Inc. v. Norton*, 336 F.3d 1094, 1102 (D.C. Cir. 2003)).  They additionally consider "the level of disproportionality . . . previously held sufficient to grant relief."  *Id.*

Both parties recognize that "Congress has not set a specific deadline" for adjudication of the visa plaintiff seeks.  Pl.'s Opp'n at 22; *see also* Defs.' Mot. at 23.  Plaintiff argues, however,

that 8 U.S.C. § 1571(b) provides a "statutory timeframe" that lays out a 180-day time period "within which" Congress intended "immigration benefits will be adjudicated."  Pl.'s Opp'n at 22. To be sure, in *Da Costa*, the D.C. Circuit considered § 1571(b) and found that this statutory provision "somewhat favor[ed]" the plaintiffs, who had waited for longer than 180 days for their application to be processed, *Da Costa*, 80 F.4th at 344, as plaintiff has here, *see* Defs.' Mot. at 23 (recognizing plaintiff alleges a delay of 15 months).  In so holding, however, the Circuit did not hold that § 1571(b) was a legal measure of the reasonableness of agency delay, calling it an "aspirational statement" that was "insufficient to set a deadline."  *See also, e.g.*, *Palakuru v. Renaud*, 521 F. Supp. 3d 46, 51 (D.D.C. 2021) (interpreting § 1571(b)'s language as "nonbinding" and "precatory" and collecting cases supporting this conclusion).  Ultimately, the Circuit found it most significant that "the delay" alleged in the plaintiffs' case "ha[d] not reached the level of disproportionality . . . previously held sufficient to grant relief."  *Da Costa*, 80 F.4th at 344.  The same is true here.

"Absent a congressionally supplied yardstick, courts typically turn to case law as a guide." *Kahenya v. Blinken*, No. 23-cv-740 (TSC), 2024 WL 1253854, at *3 (D.D.C. Mar. 25, 2024) (quotation marks and citation omitted). Courts have drawn no bright lines to determine reasonableness, but "[d]ecisions regarding the admission of foreign nationals are granted an especially wide degree of deference, as they frequently implicate relations with foreign powers, or involve classifications defined in the light of changing political and economic circumstances." *Didban v. Pompeo*, 435 F. Supp. 3d 168, 176 (D.D.C. 2020) (quotation marks omitted) (quoting *Trump*, 58 U.S. at 702–03).  This deference has led "judges in this District [to] 'consistently' h[old]" that "two-to three year [delays]" "do[] not amount to unreasonable delay." *Tahavori*, 2024 WL 1328546, at *5 (quoting *Tekle v. Blinken*, No. 21-cv-1655 (APM), 2022 WL 1288437, at *3

(D.D.C. Apr. 29, 2022)); *see also Da Costa*, 80 F.4th at 339-40, 342 (finding a four-and-a-half-year delay not unreasonable); *Azeez v. Murphy*, No. 23-cv-1947 (CRC), 2024 WL 3924565, at *5 (D.D.C. Aug. 24, 2024) (finding seventeen-month delay not unreasonable).  In contrast, delays of five years or more have "generally" been found unreasonable.  *Yavari v. Pompeo*, No. 19-cv-2524, 2019 WL 6720995, at *8 (C.D. Cal. Oct. 10, 2019) (citation omitted)); *see also Tahavori*, 2024 WL 1328546, at *4 (citing cases noting the same).

Plaintiff attempts to extend the length of the alleged delay by pointing to the filing date of his application, in October 2019.  *See* Pl.'s Opp'n at 23.  This effort, however, misstates the relevant time period, which is not the entire pendency of plaintiff's visa application process but rather the time between the last action taken by the government and the filing of plaintiff's complaint.  *Isse v. Whitman*, No. 22-cv-3114 (BAH), 2023 WL 4174357, at *6 n.4 (D.D.C. June 26, 2023) (citing *Arab v. Blinken*, 600 F. Supp. 3d 59, 68 n.7 (D.D.C. 2022); *Rahimian v. Blinken*, No. 22-cv-785 (BAH), 2023 WL 143644, at *7 (D.D.C. Jan. 10, 2023)).  That alleged delay is approximately 15 months, *see* Compl. ¶ 23; Defs.' Mot. at 3; Pl.'s Opp'n at 7, which time falls well below the two-to-three-year delays courts have "consistently" held "do[] not amount to unreasonable delay," *Tahavori*, 2024 WL 1328546, at *5 (quoting *Tekle*, 2022 WL 1288437, at *3).

Plaintiff also attempts to distinguish his case from others by pointing to the "multiple hardships" that plaintiff and his family "have suffered, and continue to suffer" from the delay, Pl.'s Opp'n at 24, including financial and medical impacts, *see id.* at 8.  There is no doubt that waiting is "undoubtedly maddening," as the D.C. Circuit has recognized, *Da Costa*, 80 F.4th at 342, and may have other impacts.  This reality, however, is true for many visa applicants and does not justify exceeding "courts' narrow role in reviewing agency delays," which only "allows a claim to proceed . . . if the delay is unreasonable within the meaning of the APA."  *Id.*  The many previous cases

discussed do not support such a finding for the 15 months that plaintiff has waited. *See id.*; *Li v. Heller*, No. 23-cv-3025 (DLF), 2024 WL 3400111, at *6 (D.D.C. July 12, 2024) ("[f]inding an unreasonable delay here, when less time has passed than in [other discussed] examples, would upset the rule prior cases have established" (citations omitted)).

The first and second *TRAC* factors favor defendants.

## 2.    *TRAC* Factor 4

The fourth *TRAC* factor considers whether "expediting delayed action" will have a harmful effect on "agency activities of a higher or competing priority." *TRAC*, 750 F.2d at 80 (citations omitted). Defendants correctly note that (1) this factor "carries significant weight," Defs.' Mot. at 25 (citing *Mashpee Wampanoag Tribal Council*, 336 F.3d at 1100), and (2) weighs heavily in defendants' favor here, Defs.' Mot at 26, particularly in the context of reducing the accumulated backlog from the COVID-19 pandemic.

Granting expedited agency action is considered inappropriate when that relief "would necessarily come 'at the expense of other similarly situated applicants,'" with "no net gain" in adjudications achieved. *Da Costa*, 80 F.4th at 343–44 (quoting *Am. Hosp. Ass'n v. Burwell*, 812 F.3d 183, 192 (D.C. Cir. 2016), and *In re Barr Lab'ys, Inc.*, 930 F.2d 72, 75 (D.C. Cir. 1991)); *see also Mukkavilli*, 2024 WL 1231346, at *2 (recognizing the same). Particularly "where resource allocation is the source of the delay, courts have declined to expedite action because of the impact on competing priorities." *Armah v. U.S. Dep't of State,* No. 22-cv-1714 (BAH), 2024 WL 2721634, at *8 (D.D.C. May 28, 2024) (quoting *Liberty Fund, Inc. v. Chao*, 394 F. Supp. 2d 105, 117 (D.D.C. 2005)).

Plaintiff offers no explanation to overcome the logistical realities caused by limited government resources, instead arguing that the government has not shown "the existence of a

queue, [p]laintiff's place in the queue, or procedures for determining the order of adjudications." Pl.'s Opp'n at 25. This argument is not persuasive. The existence of processing backlogs is no secret. *See, e.g.*, U.S. DEP'T OF STATE, Immigrant Visa Backlog Report – June 2024, https://travel.state.gov/content/dam/visas/iv-backlog-report/IV%20Report%20-%20June%202024.pdf (last updated June 2024). It is "readily apparent that '[c]onsular processing capacity is presently a zero-sum game,'" *Giza*, 2024 WL 3967284, at *7 (alteration in original) (quoting *Lee v. Blinken*, No. 23-cv-1783 (DLF), 2024 WL 639635, at *6 (D.D.C. Feb. 15, 2024)), and in this environment, expediting review in plaintiff's case "would necessarily come at the expense of other similarly situation applicants, unlike broader relief that would avoid line-jumping concerns," *Da Costa*, 80 F.4ᵗʰ at 344 (quotation marks and citation omitted).

In response, plaintiff claims that he "should not be penalized for a lack of agency resources." Pl.'s Opp'n at 25. Any applicant facing a delay could raise the same argument. "While the effect of an individual case would be minimal, an accumulation of such individual cases being pushed by judicial fiat to the front of the line would erode the ability of agencies to determine their priorities." *Tate v. Pompeo*, 513 F. Supp. 3d 132, 150 (D.D.C. 2021). As the D.C. Circuit held in *Da Costa*, "[i]n the absence of plausible allegations that [the agency] is not applying its rule of reason, moving [the plaintiff's] petition[] to the front of the line would disrupt competing agency priorities with no overall improvement in the . . . backlog." 80 F.4th at 343. Since the D.C. Circuit recognizes "no basis for reordering agency priorities" in such a scenario, *In re Barr Lab'ys*, 930 F.2d at 76, this factor weighs in defendants' favor.

### 3.    *TRAC* Factors 3 and 5

"The third and fifth factors are often considered together, and require the Court to consider plaintiffs' interests, health, and welfare." *Momeni v. Blinken*, No. 23-cv-3421 (RCL), 2024 WL

4332604, at *6 (D.D.C. Sept. 27, 2024) (quoting *Chowdhury v. Blinken*, No. 21-cv-1205 (RCL), 2022 WL 136795, at *4 (D.D.C. Jan. 14, 2022)).  While "the individual health or welfare of th[e] specific plaintiff is most relevant when evaluating TRAC factors three and five," *Khan v. Bitter*, 23-cv-1576 (BAH), 2024 WL 756643, at *5 (D.D.C. Feb. 23, 2024), the third factor also looks to the impact on others from granting plaintiff's demanded relief, requiring attention to the "many others [who] face similarly difficult circumstances as they await adjudication of their visa applications," *Mohammad v. Blinken*, 548 F. Supp. 3d 159, 168–69 (D.D.C. 2021) (citation and internal quotation mark omitted).  As already analyzed under factor four, moving plaintiff's visa application to the front of the line would necessarily divert resources and move other applicants back in the line.  *See supra*, Part III.C.2; *Azeez*, 2024 WL 3924565, at *5 (recognizing the same).

Plaintiff alleges that he has suffered "significant personal, financial, and emotional hardship," Compl. ¶ 6, but, as defendants correctly note, he "fails to plead the type of harms that could make the third and fifth *TRAC* factors plausibly tilt in [p]laintiff's favor," Defs.' Mot. at 28 (citing *Da Costa*, 80 F.4th at 345).  Indeed, the D.C. Circuit held that the third and fifth *TRAC* factors do not favor noncitizens where, as here, the noncitizen failed "for example, [to] allege that they are unable to access electricity, water, food, or shelter" due to delays in immigration benefits adjudication.  *Da Costa*, 80 F.4th at 345.  The Circuit also recognized that alleged financial harms and "uncertainty that results any time an individual must continue to wait to secure a benefit," which may prevent a noncitizen from "planning . . . and making arrangements for [his] famil[y]," *id.* at 344–45 (citation omitted)—similar to plaintiff's allegations here, *see* Compl. ¶¶ 6-10—"are insufficient to tip *TRAC* factors three and five in [plaintiff's] favor," *Da Costa*, 80 F.4th at 345.

### 4.    *TRAC* Factor 6

The sixth and final *TRAC* factor provides that "the court need not 'find any impropriety lurking behind agency lassitude in order to hold that agency action is 'unreasonably delayed,'" *TRAC*, 750 F.2d at 80 (citation omitted), and is neutral absent "plausible evidence of bad faith," *Afghan & Iraqi Allies*, 103 F.4th at 820; *see also Da Costa*, 80 F.4th at 345-46. Plaintiff in this case "does not allege bad faith on the agency's part." Pl.'s Opp'n at 26. Thus, this factor is effectively neutral.

### 5.    *TRAC* Factors Considered in Totality

Considering the *TRAC* factors together, plaintiff fails to state a claim of unreasonable delay under the Mandamus Act or the APA. Other cases involving substantially longer delays than presented here have overwhelmingly resulted in the same conclusion, and this Court applies the same reasoning to plaintiff's claims. *See, e.g.*, *Da Costa*, 80 F.4th at 339–40, 342 (finding a four-and-a-half-year delay not unreasonable); *Azeez*, 2024 WL 3924565, at *5 (finding seventeen-month delay not unreasonable); *Mashaghzadehfard v. Blinken*, No. 23-cv-3164 (RJL), 2024 WL 4198689, at *5–6 (D.D.C. Sept. 16, 2024) (finding nineteen-month delay not unreasonable); *Rahimian*, 2023 WL 143644, at *7 (finding forty-one month delay not unreasonable); *Zaman v. U.S. Dep't of Homeland Sec.*, No. 19-cv-3592 (ABJ), 2021 WL 5356284, at *6 (D.D.C. Nov. 16, 2021) (finding forty-two month delay not unreasonable); *Akrayi v. U.S. Dep't of State*, No. 22-cv-1289 (CRC), 2023 WL 2424600, at *3 (D.D.C. Mar. 9, 2023) (finding a nearly three-year delay not unreasonable); *Arab*, 600 F. Supp. 3d at 70 (finding a visa processing delay of thirty months not unreasonable). The context of agency resource backlogs stemming from the COVID-19 pandemic, and the fact that granting plaintiff relief would merely reorder his visa application in the queue of waiting applicants, all support the conclusion that the delay in adjudication of plaintiff's visa application is not unreasonable.

While recognizing the hardship for plaintiff and his family, *see* Compl. ¶¶ 6–10, countless other noncitizens face similar or worse timetables as they await immigration decisions, *see Da Costa*, 80 F.4th at 346 (affirming dismissal where "[r]uling in favor of Plaintiffs would require USCIS to process [p]laintiffs' petitions ahead of those of other petitioners who have been waiting as long or longer for their EB-5 petitions to be adjudicated"); *Burwell*, 812 F.3d at 192 (collecting cases "reject[ing] mandamus claims that would have had the effect of allowing the plaintiffs to jump in the line, functionally solving their delay problem at the expense of other similarly situated applicants").

For all the stated reasons, plaintiff's complaint must be dismissed for failure to state a claim.

## IV.    CONCLUSION

For the foregoing reasons, defendants' motion to dismiss the Complaint for failure to state a claim for relief, under Federal Rule of Civil Procedure 12(b)(6), is granted.  An Order consistent with this Memorandum Opinion will be filed contemporaneously.


Date: October 30, 2024


                                                  _____
**BERYL A. HOWELL**
United States District Judge